## New York & N. Ry. Co. *v.* New York & N. E. R. Co.

*(Circuit Court, S. D. New York.   May 31, 1892.)*

1. INTERSTATE COMMERCE — CARRIERS — CONNECTING LINES — "EQUAL FACILITIES" — PLEADING.
    Section 3 of the interstate commerce act, as amended by the Laws of 1889, provides (1) that every common carrier shall provide equal facilities for the interchange of traffic with connecting lines; and (2) that there shall be no discrimination in rates and charges between such lines. A petition, presented by a line affected, averred that petitioner was deprived by respondent of equal facilities with a competing connecting line for interchange of traffic, a discrimination in rates, the withdrawal of a joint through traffic, and a threat to close a through route via petitioner's line. *Held* a charge, not only of discrimination in rates, but of failure to provide equal facilities for interchange of traffic, and to bring before the commission the determination of both offenses.

2. SAME — CHANGES OF SCHEDULE.
    Under the charge of a denial of "equal facilities" for the interchange of traffic the conduct of respondent in so arranging the running of its trains that greater facilities for interchanging, forwarding, and delivering freight were afforded to a competing connecting line than to petitioner, was proper to be shown to the court in a proceeding to enforce an order of the commission, though no question of the hours of running trains was presented to the commission in express terms.

3. SAME — EFFECT OF CONTRACT FOR FACILITIES.
    The offending line, being a separate, independent company from the favored line, owning no stock therein, neither having built, bought, nor leased it, conducted its business, nor received its earnings, could not escape the inhibition of the statute by a mere contract for the interchange of traffic. The effect of such contract could not be to make the one line a mere extension of the other.

4. SAME — EFFECT OF COMBINATION OF CARRIERS.
    Though the offending line and the favored line, being members of a "terminal company," a combination of carriers by which the terminus of the favored line was connected with New York, were a legal unit within section 1 of the act (24 St. at Large, p. 379) providing that it shall "apply to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad, * * * when both are used under a common control * * * for a continuous carriage or shipment from one state," etc., it was not thereby relieved from its obligations under the act to all roads connecting directly with itself, of which petitioner was one.

In Equity.   Application by the New York & Northern Railway Company to compel obedience on the part of the New York & New England Railroad Company to an order of the interstate commerce commission in respect of discrimination against petitioner in affording freight facilities. Heard on motion to dismiss the petition.   Motion denied.

*Sherman Evarts,* for complainant.

*Wager Swayne,* for defendant.

LACOMBE, Circuit Judge.   This is an application on petition of the New York & Northern Railway Company, as a person interested, to enforce obedience to an order or requirement made May 6, 1891, by the interstate commerce commission, and is presented under section 16 of the interstate commerce act, as amended by chapter 382 of the Laws of 1889.   Upon the return day of the order to show cause, heretofore granted, defendant filed its answer, and, before any proofs were taken, moved to dismiss the petition.   Such a motion must be determined upon the assumption that the averments of the petition and the findings of fact of the commission (made by the statute *prima facie* evidence) cor-

rectly set forth the matters therein stated. It seems undesirable at this stage of the case to summarize generally the facts thus assumed to be true, as subsequent evidence taken in this court may modify such assumptions. The section invoked by the petitioner upon its application to the commission reads as follows:

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivery of passengers and property to and from their several lines, and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines. But this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

Section 13 provides that any person (or) corporation complaining of anything done or omitted to be done by any common carrier subject to the provisions of this act, in contravention of the provisions thereof, may apply to the commission by petition, which shall briefly state the facts. Under that section this petitioner applied to the commission, and, after taking proofs, obtained the order or requirement it is now seeking to enforce.

The respondent contends that the second clause of section 3, above quoted, enacts two different and independent subjects as grounds of complaint against carriers; the one being the denying reasonable, proper, and equal facilities for the physical interchange and prosecution of traffic between a company's line and connecting lines; the other being discrimination in respect to rates and charges between such connecting lines. A similar construction is adopted in the opinion of the commission, which holds that the provision "embraces the imposition of an affirmative duty to interchange and forward traffic between connecting lines, and a prohibition that there shall be no discrimination in rates and charges between such connecting lines." Respondent further contends that the charge and allegations before the commission dealt only with one of these subjects, and that, therefore, any order of the commission requiring the respondent to cease and desist from any violation which is embraced within the other subject would not be a "lawful" order; and apparently also insists that the judgment of the commission was in fact confined to discrimination in rates and charges. An examination of the record, however, does not support this contention. The petition which was presented to the commission charged that the respondent was depriving petitioner of reasonable, proper, and equal facilities (as compared with those afforded to the Housatonic Railroad, a competing connecting line) for the interchange of traffic between petitioner and respondent,

and for the receiving, forwarding, and delivering of property to and from the line of said petitioner and the line of the respondent. In support of such charge it averred, not only a discrimination in rates, and the withdrawal of a joint through tariff which had been theretofore in force and operative between the parties, but also that respondent had threatened to close the through route via petitioner's line altogether, and had refused to accept freight at all on through bills, thus compelling the shippers to attend at Brewsters,—the point of connection,—to transfer and rebill their goods. This was plainly a charge, not only of a discrimination in rates, but of a failure to discharge the affirmative duty to interchange and forward traffic with the equal facilities, required by the first subdivision of the second clause of the third section, above quoted. The petition prayed for an order directing the respondent to grant equal facilities for the interchange of traffic, and for the receiving, forwarding, and delivering of property to and from the line of petitioner and that of respondent, as were here afforded to the Housatonic Railroad. The commission found that there had been a refusal to afford facilities for the interchange of interstate traffic, and the receiving, forwarding, and delivering of the same, reasonable, proper, and equal to the facilities afforded to the other connecting road; that the respondent was "guilty of the discrimination charged in the complaint, in its rates and charges for the interchange of interstate traffic, and in the arrangements it makes for through lines for the freight traffic." And the order or requirement of the commission commanded the respondent to desist from discriminating against petitioner (1) by refusing to make such arrangements with, or afford such facilities to, the petitioner for the interchange, at the point of connection, of interstate traffic, and for the receiving, forwarding, and delivering of such traffic, as are reasonable and proper and equal to arrangements made or facilities afforded by it for interchange between respondent's line and the other connecting road; and also (2) from discriminating in respect to rates and charges, etc. The decision of the commission manifestly disposed of both subjects of complaint, and it seems quite plain from the record that both subjects were before them.

Since the service of the order the respondent has restored the joint through tariff. It has also desisted from refusing to accept freight on through bills, but has so arranged the running of its trains that the facilities for interchange, forwarding, and delivering are (as is alleged) substantially no better than before, and not equal to those afforded to the competing line. The respondent contends, however, that such acts may not be shown before this court, acting summarily under section 16 in review and enforcement of the order of the commission, because no question of the hours of running trains was presented to the commission. It is manifest that equal facilities may be refused quite as much in one way as in the other, and both grounds of complaint relate to the subject-matter of physical interchange and prosecution of traffic, instead of to a discrimination in rates. To refuse altogether to receive traffic from one connecting line; to receive it only under arrangements which impose such obligations upon the shippers as to transfer and rebilling as would

make the transaction of the business impracticable in competition with a more favored line; to receive it without reshipment and transfer, indeed, but systematically to neglect to forward it; to receive and forward it, but to so arrange the hours or manner of its delivery as to deprive it of facilities equal to those afforded to traffic coming from the competitor,— these and a great variety of other devices which might be suggested, while differing somewhat in detail, are in substance practically the same. Any one of them, if satisfactorily proved, may justify the conclusion that a common carrier subject to the provisions of the act is deliberately refusing to "afford all reasonable, proper, and equal facilities for the interchange of traffic" with a connecting line, which the statute makes it his affirmative duty to afford. And there seems no good reason for holding that the order of the commission should not be as broad as the conclusion directing the carrier to "cease, desist, and thenceforth abstain" from refusing to afford such facilities, when such refusal was the offense charged and proved. To require petitioner to begin a new proceeding each time the ingenuity of the offending carrier may devise some slight variation of the methods by means of which such refusal is persisted in would be to fritter away the system of procedure provided in the statute to secure obedience to its requirements. It must be held, therefore, upon this motion, assuming the facts to be as stated, that the order made by the commission was no broader than the petition and proofs before them warranted; and that this court may properly investigate the charge that respondent is disobeying the requirements of such order by acts and omissions in substance the same as those considered by the commission, directed to the same end, and accomplishing precisely the same result.

The consideration of the next objection, viz., that the point where the respondent exchanges traffic with the petitioner is 16 miles from the point where it exchanges traffic with the competing road, and that it cannot be required to furnish equal facilities to all roads at different places, may be postponed till the proofs are closed. No doubt, as respondent contends, the question of the existence of discrimination and of an actionable refusal of equal facilities is to be ascertained by applying all the considerations of equity affecting the case, and should be found to exist only when such facilities can be afforded "under substantially similar circumstances and conditions;" but there is nothing in the act which makes mere distance between connecting points, whether a furlong, a mile, or ten, or twenty, controlling of that question. There is no suggestion here of affording new facilities at a new connecting point. So far as the record shows, the affording of equal facilities to both connecting roads at their several points of connection has been at all times entirely practicable, easy, and convenient, and the existing equality was destroyed by the defendant solely to divert the business of petitioner to a more favored road. In the face of the finding of the commission that "the physical condition for interchanging of traffic with both the connecting lines are suitable, adequate, and substantially equal,"—a finding which the form of this motion leaves unchallenged,—the requirements

of the second clause of the third section seem to be plainly applicable. Until this finding of fact is questioned, and the record upon which the case made in this court is to be finally determined is completed, further discussion of this point would be a waste of time.

It is further contended that there is no question here of equal facilities to two connecting lines; that what the petitioner is really asking is that the New England Company shall extend to petitioner's line the same facilities which it extends to its own line. The facts do not seem to warrant such a contention. The Housatonic Company is a separate corporation, independent from the New England Company. The latter, so far as appears, does not own even a share of the former's stock. It neither built, nor bought, nor leased it. It neither conducts its business, nor takes the earnings therefrom. The only link between them is such community of interest as springs from the existence of the contract for the interchange of traffic, which it is claimed secures the former road unequal facilities. If it be that such a contract makes each line a mere continuation or extension of the other, it is hard to conceive how a case of refusing equal facilities could ever be made out. The very granting of superior facilities to one line would make it a part of the one that favored it, and no longer a connecting road, when compared with its unsuccessful rival. Nor am I able to see that the mere ownership of half the stock of the terminal company, which connects the terminus of the Housatonic road with New York, alters the situation in any way, when the immediate question is as to the respective facilities accorded to the Housatonic Railroad and to the petitioner. Respondent cites the first section of the act, providing that it shall "apply to any common carrier or carriers engaged in the transportation of passengers or property wholly by railroad, or partly by railroad and partly by water, when both are used, under a common control, management, or arrangement for a continuous carriage or shipment from one state," etc., "to any other state," etc. That the respondent (considered by itself) is so engaged is not disputed. It runs through or into the states of Massachusetts, Rhode Island, Connecticut, and New York. It is no doubt true that the arrangements between respondent, the Housatonic road, and the terminal company are such that they form a combination of carriers, within the meaning and effect of section 1, so as to make them a legal unit within the provisions of the act, and, as such, jointly responsible for affording equal facilities in proper cases, to competing lines connecting with such combined continuous line. But, besides the duty which any one of these corporations may owe, jointly with the others, it is not relieved from its obligations under the act to all roads which connect directly with itself. The New England Railroad might, perhaps, by reason of its combination with the other two, be charged with some duty towards lines connecting physically with the Housatonic Railroad, but such combination cannot excuse it from fulfilling its own obligations to roads which connect physically with itself, unless its union with the other combined lines is of such a character that their lines have become its own; and such a state of affairs does not seem to exist here. The

motion to dismiss the petition is therefore denied. Counsel may arrange for a trial of the issues immediately upon the adjournment of the present jury session.