SOUTHERN RY. CO. v. ST. LOUIS HAY & GRAIN CO.

(Circuit Court of Appeals, Seventh Circuit. April 16, 1907.)

No. 1,329.

1. COURTS—FEDERAL COURTS—TRIAL TO COURT—PRACTICE.
    On a trial of a cause in a Circuit Court without a jury, the court cannot be required to "hold" specific propositions of law presented by the parties.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 934.]

2. SAME—FINDINGS OF FACT.

Parties to a suit at law in a federal court, tried to the court without a jury, have no right to require the court to make a special finding.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 927, 934.]

3. SAME—WRIT OF ERROR—FEDERAL COURT—SCOPE OF REVIEW.

Where the finding of a federal court in a law case tried without a jury is general, a writ of error reaches only the court's ruling in the progress of the trial, and, if the finding is special, the review may extend to the determination of the sufficiency of the facts found to support the judgment, as provided by Rev. St. § 700 [U. S. Comp. St. 1901, p. 570].

4. COMMERCE—INTERSTATE COMMERCE—COMMISSION'S FINDINGS—EVIDENCE.

The interstate commerce act (Act Feb. 4, 1887, c. 104, § 14, 24 Stat. 384, as amended by Act March 2, 1889, c. 382, § 4, 25 Stat. 859 [U. S. Comp. St. 1901, p. 3165]) provides that, whenever an investigation shall be made by the commission, it shall make a report in writing which shall include the findings of fact on which the commission's conclusions are based, etc., and such findings shall thereafter be deemed prima facie evidence as to each and every fact found in all judicial proceedings. *Held* that, where a proceeding to enforce the commission's findings was tried to a federal court without a jury, it was not error for the court to receive the commission's report in evidence without excluding matters of opinion stated therein, as distinguished from the commission's findings of fact.

5. WRIT OF ERROR—ADMISSION OF EVIDENCE—PREJUDICE.

Where on writ of error in a suit to enforce a finding of the Interstate Commerce Commission, the record affirmatively showed that neither the Commission nor the Circuit Court based any part of the judgment sought to be reviewed on certain evidence admitted over objection, the admission of such evidence was harmless.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4153, 4185, 4186.]

6. COMMERCE—INTERSTATE COMMERCE COMMISSION—FINDINGS—EVIDENCE.

A finding by the Interstate Commerce Commission that a just and reasonable charge for the privilege of reconsigning hay at East St. Louis was one cent per hundredweight was prima facie evidence of its own truth.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, § 145.]

7. CARRIERS—RATES—DISCRIMINATION.

A carrier's rates on through business do not prove that a local rate is unreasonable, nor can the local rate throw light on the justice or injustice of discriminations between nonlocal shipments of the same origin and destination.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 84.]

8. SAME—EXCESS CHARGES—RECONSIGNMENT PRIVILEGE.

An additional charge by a carrier of two cents per hundredweight for the privilege of reconsigning hay at East St. Louis, originating in northwestern territory and shipped into southeastern territory, was excessive, within Interstate Commerce Act, § 1 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3155]) prohibiting excessive rates, and thereby produced an unjust discrimination, in violation of sections 2 and 3.

In Error to the Circuit Court of the United States for the Eastern District of Illinois.

For opinion below, see 149 Fed. 609.

Defendant in error began this action at law under section 16 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 384, amended by Act March 2, 1889, c. 382, § 5, 25 Stat. 859 [U. S. Comp. St. 1901, p. 3165]), by filing a petition to recover judgment against plaintiff in error for the amount of a reparation awarded by the Interstate Commerce Commission. A jury having been duly waived, the court heard the evidence, made a special finding of

facts, and entered judgment for the amount of the award, together with interest, attorney's fees and costs.

The reparation was awarded by the Commission on a hearing of the complaint of defendant in error against plaintiff in error and three other railroads that run to southeastern territory. That complaint, omitting the parts descriptive of the parties, was as follows:

"(3) That defendants have adopted and maintain in force upon their respective lines of railway schedules of rates and charges wherein and whereby it is provided that the charges exacted for transporting hay in car loads over said lines, respectively, from East St. Louis to said southeastern points, shall be 2 cents per 100 pounds in addition to the regular established rates for transporting hay in carloads from Cairo, Ill., to said southeastern points, when the shipments originate at points on railroads other than those of defendants and are not reconsigned at East St. Louis; and 4 cents per 100 pounds in addition to such established rates when the shipments are reconsigned at East St. Louis. That is to say, 2 cents per 100 pounds is exacted in each instance by defendants, respectively, for the privilege of reconsignment at East St. Louis.

"(4) That complainant made shipments of hay in car loads over defendants' lines of railway, as described in Schedule A, hereto attached and made a part hereof, on or about the dates mentioned in said schedule, from East St. Louis to said southeastern points; that said shipments were reconsigned at East St. Louis; and that defendants exacted for the transportation thereof, as described in said schedule, 4 cents per 100 pounds in addition to such established rates between Cairo and said southeastern points, while they contemporaneously severally transported in car loads hay that was not reconsigned at East St. Louis, for other shippers and between exactly the same originating and destination points, for 2 cents per 100 pounds in addition to said established rates between Cairo and said southeastern points.

"(5) That the cost to defendants, respectively, in each instance, of transporting such shipments from East St. Louis to said southeastern points is the same whether the shipments are reconsigned at East St. Louis or not; that the higher transportation charge hereinbefore described is unreasonable; and that by reason of the premises each of said defendants has subjected and still is subjecting complainant and its traffic to the payment of unreasonable and unjust rates of transportation and to undue and unreasonable prejudice and disadvantage, and has given, and still is giving, to said other shippers and their traffic undue and unreasonable preferences and advantages, in violation of the provisions of the act to regulate commerce, particularly, sections 1, 2, and 3 thereof."

Plaintiff in error answered separately:

"(3) It admits the allegations contained in paragraph 3 of said complaint.

"(4) It has no information or knowledge sufficient to form a belief as to the truth of the allegations contained in the fourth paragraph of said complaint in so far as same relates to various shipments made by complainant; but in so far as said allegations refer to its tariff for reconsignment this respondent admits same.

"(5) This respondent denies the allegations contained in paragraph 5 of said complaint.

"Further answering paragraph 5 of said complaint, this respondent alleges that the reconsignment privilege allowed at St. Louis and East St. Louis involves greater cost to this respondent and other railroad companies in the handling of said traffic than is incident to through shipment of same. For with reference to traffic which is reconsigned there is additional switching, greater delay of cars, extra expense in maintenance of clerical force required by taking up the expense bills of the carrier bringing the traffic to East St. Louis, the issuance of new bills of lading, new way bills, etc. There is also extra expense involved in reloading and also the increased probability of congestion in the freight yards, etc.

"Further answering said paragraph, this respondent alleges that the charge of reconsignment is in all cases practically one cent less than the rate from East St. Louis, proper, to the territory described in the complaint as 'southeastern points' and that this privilege of reconsignment is accorded to com-

plainants and others at East St. Louis at a rate invariably less than the local shipper at East St. Louis would be called upon to pay for the transportation of hay originating at East St. Louis and destined to said 'southeastern points.'

"It is true that the reconsignment privilege at East St. Louis is granted upon the condition that a somewhat greater rate shall be charged than the through rate from the point of origin to the point of destination when reconsignment is not availed of, but the benefits to the shipper and the additional expense and trouble entailed upon the carriers fully justify the slight additional charge."

The Commission's findings on the issues thus framed are embodied in the special finding of facts and judgments as rendered by the court below:

"And now again come the parties to this suit, plaintiff and defendant, by their respective attorneys, and the court having heretofore heard the arguments of counsel for the respective parties and taken the cause under advisement, and the court now being fully advised in the premises, on consideration thereof doth find that on the hearing of this cause before and by the Interstate Commerce Commission, the said Commission found in its report and opinion in substance the following facts:

"(1) Large quantities of hay produced in territory east, north, and west of East St. Louis are consumed in southeastern territory, and much of it is carried through the East St. Louis gateway and passes over defendant's lines of railway from East St. Louis to points south of the Ohio river. With the exception of the Illinois Central, defendant's lines terminate at East St. Louis, and generally also lines of railway over which the hay is carried from said producing points to East St. Louis terminate at that point.

"(2) For the transportation from East St. Louis to said southeastern points defendant applies a proportional rate, which is 2 cents per 100 pounds greater than the rate to said southeastern points from the Ohio river, if the hay is not unloaded at a warehouse in East St. Louis, regardless of whether or not the hay is shipped locally to East St. Louis, or through billed from the point of origin to the point of final destination, and regardless of provisions in the tariffs concerning through billing; but if the hay is unloaded at a warehouse in East St. Louis defendant exacts for the transportation thereof from East St. Louis to said southeastern points a rate which is 4 cents per 100 pounds greater than the rate from the Ohio river to said southeastern points.

"(3) Complainant operates two warehouses at East St. Louis, and most of the hay it handles it purchases on the track at East St. Louis, unloads, inspects, assorts, and reloads at said warehouses, and sells at southeastern points, in competition with other hay dealers who do not unload the hay at East St. Louis. In such competition complainant is therefore prejudiced to the extent of 2 cents per 100 pounds by defendant's method of applying rates of transportation, as aforesaid. Defendant claims this 2-cent difference in rates is justified by difference in cost to it between the two kinds of transportation services it is called upon to perform.

"(4) At East St. Louis transfers of loaded cars from the northern to the southern lines and transfers of empty cars from the southern to the northern lines are generally made by a connecting railroad company, and the charge made by that company for such service is $4 per car when the hay is unloaded as aforesaid, but only $2 per car when the hay is not so unloaded, and in each instance this charge is paid by the carrier which hauls the hay south from East St. Louis.

"(5) When the hay is unloaded, as aforesaid, an empty car must be furnished for the shipment by the carrier which hauls the hay south from East St. Louis, and the service of so furnishing is fairly worth from 40 to 60 cents per car.

"(6) The car is in use from 2 to 3 days longer when the hay is unloaded, as aforesaid, than when it is not so unloaded, and a fair compensation for such use is 20 cents per day.

"(7) When hay is unloaded and reloaded at warehouses, as aforesaid, the time consumed in doing the work averages from 6 to 8 hours, but the expense of such unloading and reloading is borne entirely by the shipper.

"(8) Shipments of hay to which the rate of 2 cents per 100 pounds above the rate from the Ohio river is applied, as aforesaid, and which are not unloaded

at East St. Louis warehouses, are frequently transferred from one car to another in the railroad yards at East St. Louis, either because cars in which the hay is shipped to East St. Louis from the north are out of repair, or because the northern lines are not willing to allow cars to go south from East St. Louis. The expense of such transfer is from $1.25 to $1.50 per car, and this expense is entirely borne by the carrier which hauls the hay south from East St. Louis.

"(9) The transfer charge of $4 per car above mentioned was formerly $3 per car, and the transfer charge of $2 per car above mentioned was formerly $1.50 per car.

"(10) The weight of hay in cars shipped, as aforesaid, from East St. Louis to southeastern points is from 1,000 to 2,000 pounds greater when the hay is reloaded at East St. Louis warehouses than when it is not so reloaded. This is an advantage in favor of the reconsigned hay.

"(11) Cars from the north, after being unloaded at warehouses as aforesaid, are frequently reloaded for the south, thus avoiding expense to the southern line of placing an empty car and subtracting perhaps a day from the additional time of the car service.

"(12) That, taking everything into account, the average additional expense to southern lines in case of reconsigned hay will not exceed that of direct through shipments by more than $2 to $2.50 per car, which is equivalent on the average loading of hay to about 1 cent per 100 pounds.

"(13) Much of the hay which actually passes through East St. Louis might reach its southern destination via other gateways. Hay grown in different sections also competes via these other gateways in the south with that which does or might pass through East St. Louis. These gateways are Cincinnati, Louisville, Evansville, Cairo, Memphis, Nashville, and perhaps others. The testimony showed that at all these points hay could be stopped off, unloaded, and treated as the complainant handles its hay at East St. Louis, without the imposition of any charge in addition to the through rate. The testimony showed that these markets all competed with East St. Louis, but the force of that competition did not appear.

"(14) That complainant actually paid to the Southern Railway Company on reconsigned shipments of hay, at the rate of 2 cents per 100 pounds, the difference between the reconsigning rate and the rate on hay not reconsigned, the sum of $3,144.17.

"And from the evidence heard and adduced on the trial of this cause in this court the court finds that the said findings of fact by the said Interstate Commerce Commission are supported and justified by the said evidence, and—

"It is ordered that the said findings of fact, as above recited and set out, be and the same are adopted as the special findings of fact of the court, and that the same be set out in the record of this court accordingly.

"It is therefore considered, ordered, and adjudged by the court that the plaintiff herein have and recover of the defendant herein the sum of one thousand six hundred fifty nine and 41/100 ($1,659.41) the same being the amount of reparation awarded by the said Commission to the plaintiff against the defendant, with 5 per cent. interest from the date of said award; and it is further ordered and adjudged by the court that the plaintiff have and recover of the defendant its costs herein to be taxed, including a reasonable attorney's fee to be hereafter fixed, and that execution issue against the defendant for the amount of the said judgment and the said costs."

Section 1 of the act to regulate commerce, so far as it pertains to transportation charges, reads as follows:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivering, storage, or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

Section 2 provides: "That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this

act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

And the first paragraph of section 3 provides: "That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

C. B. Northrup and Edward C. Kramer, fo, plaintiff in error.

P. J. Farrell and L. O. Whitwell, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

Of the 70 assignments of error the majority present nothing for our consideration. Many of them are addressed to the refusal of the court to "hold" certain "propositions of law" which were submitted to the court in writing by plaintiff in error, as though the court as judge were required to give instructions to the court as jury. Streeter v. Sanitary District, 133 Fed. 124, 66 C. C. A. 190. Other assignments are based on the court's declining to entertain certain proposed findings of fact submitted in writing. Parties have no right to require a federal court, in hearing a law case without a jury, to make a special finding. If the finding is general, a writ of error reaches only "the rulings of the court in the progress of the trial"; "and when the finding is special, the review may extend to the determination of the sufficiency of the facts found to support the judgment." Section 700, Rev. St. U. S. [U. S. Comp. St. 1901, p. 570].

Exception was taken to receiving the Commission's report in evidence. Section 14 provides:

"That whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall include the findings of fact upon which the conclusions of the Commission are based, together with its representation as to what reparation, if any, should be made by the common carrier to any party or parties who may be found to have been injured, and such findings so made shall thereafter in all judicial proceedings be deemed prima facie evidence as to each and every fact found."

The findings and the conclusions of the Commission were embraced in an opinion prepared by one of the members. If this case had been tried before a jury, it might have been the court's duty to separate the findings of fact from matters of opinion and to instruct the jury to disregard the latter (Western N. Y. & P. Rld. Co. v. Penn. Refining Co., 137 Fed. 343, 70 C. C. A. 23), but such a rule is inapplicable to a trial before the court alone.

Over plaintiff in error's objection, evidence was received that at markets other than East St. Louis the "reconsigning" privilege was granted without charge. If it be conceded that this evidence was not within the issues, the ruling would not necessarily afford a ground for reversal. To constitute prejudicial error when an action at law

is tried by the court without a jury, the evidence improperly admitted must have entered into the result at which the trial court arrived. Streeter v. Sanitary District, 133 Fed. 124, 66 C. C. A. 190. Here the record affirmatively shows that neither the Commission nor the Circuit Court based any part of the judgment on the objectionable evidence.

The finding that the just and reasonable charge for the reconsigning privilege at East St. Louis was one cent a hundredweight is challenged as being unsupported by evidence on the part of defendant in error and contrary to uncontradicted evidence on the part of plaintiff in error. Plaintiff in error's evidence was not uncontradicted, for in the Circuit Court the finding of the Commission was prima facie evidence of its own truth. But, going beyond that, the shipper had evidence in the way of car rentals and switching charges made by railroads against each other at East St. Louis, which supported the finding that anything in excess of one cent a hundredweight was unjust and unreasonable. It is not our function to balance this against the carrier's method of figuring that two cents a hundredweight was a just and reasonable charge.

The remaining question presented by any proper assignment of error is whether the finding supports the judgment. Hay that comes into East St. Louis by boat or by wagon has to pay plaintiff in error, whose northwestern terminus is East St. Louis, a local rate of five cents a hundredweight to the Ohio river. Plaintiff in error is not obliged to do business beyond its own tracks; but if it does it cannot make its voluntary undertakings the ground for unreasonable rates and unjust discriminations and undue disadvantages. Shipments that originate at East St. Louis cannot avoid the southeastern railroads that begin there; but shipments that originate in northwestern territory may go by other routes. To increase its traffic plaintiff in error offers to take hay of northwestern origin from connecting roads and carry it at cheaper rates, with or without the reconsigning privilege, than it carries hay of East St. Louis origin. The rates on through business do not prove that the local rate is unreasonable; and, on the other hand, the local rate can throw no light on the justice or injustice of discriminations between shipments of northwestern hay of the same origin and destination. The local rate has nothing to do with the case as we view it. The comparison is between the through rate without the reconsigning privilege and the through rate with the reconsigning privilege. The complaint concedes, by not denying, that the through rate, aside from the reconsigning privilege, is just and reasonable. The attack is upon the charge exacted for the reconsigning privilege and upon that alone. As we have already indicated, plaintiff in error is engaging in a business which it could not have been compelled to undertake; but, undertaking it, it brings itself within the requirements of the act to regulate commerce. The finding, in our opinion, supports the conclusion that the exaction is in violation of section 1 as being excessive, and thereby produces unjust discriminations and undue disadvantages, in violation of sections 2 and 3.

The judgment is affirmed.