CHICAGO, B. & Q. R. CO. et al. v. FEINTUCH et al.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

No. 1,966.

1. CARRIERS (§ 36*)—INTERSTATE COMMERCE ACT—EXCESSIVE RATE—RECOVERY OF DAMAGES—"INJURED PERSON."

A shipper, who is charged by a railroad company on an interstate shipment a rate in excess of that established by the company and filed with the Interstate Commerce Commission, is injured by such unlawful rate within the meaning of the Interstate Commerce Act Feb. 4, 1887, c. 104, § 13, 24 Stat. 383 (U. S. Comp. St. 1901, p. 3164), without regard to the question of its reasonableness, and under section 16 the Interstate Commerce Commission has power to make an award of damages therefor which may be enforced by action in a Circuit Court.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 36.*

For other definitions, see Words and Phrases, vol. 4, p. 3614.]

2. COMMERCE (§ 91*)—INTERSTATE COMMERCE Act—ACTION TO ENFORCE AWARD OF COMMISSION—PLEADING.

An action may be maintained in a Circuit Court under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), to enforce an order of the Interstate Commerce Commission awarding reparation to a shipper for an unlawful charge by a railroad company, where the complaint and the record show that the cause of action is the same as that acted on by the commission, which need not necessarily be set out in its order.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. § 91.*]

3. COMMERCE (§ 95*)—INTERSTATE COMMERCE ACT—ACTION TO ENFORCE AWARD OF COMMISSION—EVIDENCE.

In an action against a railroad company brought under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), to enforce an order of the Interstate Commerce Commission, awarding reparation to a shipper, which is tried to the court, the admission in evidence of the report of the commission is not error, although it may contain irrelevant matter.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CARRIERS (§ 30\*)—CONSTRUCTION OF RAILROAD TARIFF SCHEDULES—"FUR-
NITURE."

Showcases are "furniture" within the ordinary meaning of the word, which governs in the construction of tariff schedules published for the information of the public, and are included in a commodity rate on "furniture (new) all kinds."

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.\*

For other definitions, see Words and Phrases, vol. 4, pp. 3013-3016.]

5. CONSTITUTIONAL LAW (§ 248\*)—INTERSTATE COMMMERCE ACT—ALLOWANCE OF
ATTORNEY'S FEES.

The provision of Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), for the allowance of an attorney's fee to a petitioner, if he shall prevail in an action to enforce an award of the Interstate Commerce Commission, is not unconstitutional as class legislation.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 248.\*]

In Error to the Circuit Court of the United States for the Northern District of California.

Action by M. Feintuch and the Newton Gum Company against the Chicago, Burlington & Quincy Railroad Company, the Union Pacific Railroad Company, the Southern Pacific Company, and the Atchison, Topeka & Sante Fé Railway Company. Judgment for plaintiffs, and defendants bring error. Affirmed.

This is an action instituted under the interstate commerce act, by defendants in error against plaintiffs in error, to recover for reparation in pursuance of an order of the Interstate Commerce Commission directing that the same be made.

The complainant Feintuch, under the name Frankel Display Fixture Company, on December 24, 1906, caused to be shipped, over the Chicago, Burlington & Quincy, Union Pacific, and Southern Pacific Railways, a car load consignment of showcases, 20,900 pounds in weight, from Quincy, Ill., to San Francisco, Cal., for which transportation the said defendant railroad companies charged the shipper a rate of $3 per 100 pounds whereas it is claimed by the shipper that $2.20 per 100 pounds is the schedule or lawful rate. On January 3, 1907, Feintuch in like manner made another shipment over the same lines, and a like charge was exacted for the service of transportation. And on December 28, 1907, the complainant Newton Gum Company made a like shipment of showcases, the place of shipment and the destination being the same, over the Chicago, Burlington & Quincy and the Atchison, Topeka & Santa Fé Railways, for which transportation a like charge was made to that which Feintuch was required to pay. The complainants, claiming to be injured and damaged by these charges, on September 29th filed their petitions with the Interstate Commerce Commission against said railroad companies, demanding reparation. The commission upon investigation awarded reparation in sums representing the difference between the tariff rate of $3 on 100 pounds and $2.20 on 100 pounds. The defendants refusing to grant the reparation, although directed so to do by the commission, the complainants instituted the present action in the Circuit Court to recover against the defendants the amount of reparation ordered to be made by the commission. The complaint states the fact of shipment, the charges exacted, the rate claimed to be the lawful rate, the difference between that and the rate charged, the fact of petitioning the Interstate Commerce Commission for reparation, the report of the commission in toto, the order of reparation, the further fact of service of the order upon the defendant companies, and the defendants' re-

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fusal to comply with the same. An attorney's fee of $150 is demanded in addition to the damages claimed.

A demurrer to the complaint being overruled, trial was had before the court (a jury having been waived), resulting in a judgment favorable to complainants, from which the defendants prosecute this writ of error.

George D. Squires and C. W. Durbrow, for plaintiffs in error.

Milton B. Badt, for defendants in error.

Before GILBERT, Circuit Judge, and HANFORD and WOLVERTON, District Judges.

WOLVERTON, District Judge (after stating the facts as above). [1] The defendants' fourth contention will be first examined. It is that:

"The commission has no power to award reparation, nor has the court below power to uphold an order for reparation, unless actual injury has been sustained from an omission or failure to observe some requirement of the act, and, in order to recover, pecuniary injury must be shown to entitle the complainant to damages in such a case."

In other words, it is thought the shipper sustains no injury, unless it be shown that the freight charges imposed are unreasonable and unjust. Under the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), every common carrier is required to adopt a schedule of rates, and to publish the same for the benefit of the public, so that shippers may be readily informed thereof and enabled to determine for themselves the cost of transportation. It is further explicitly provided that, when any such common carrier shall have established and published its rates, fares, and charges, it shall be unlawful for it to demand, collect, or receive a greater or less compensation for transportation than as specified in the schedule. Section 6, Interstate Commerce Act; 3 Fed. St. Ann. 808, 827 (Act March 2, 1889, c. 382, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3156]). It is the purpose of the act to impose the duty upon carriers of establishing schedules of rates, and, when a schedule has been established, it is rendered unlawful for the carrier to depart from it, except in the manner provided for revising the schedule. Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S, 426, 27 Sup. Ct. 350, 51 L. Ed. 553. The first section of the act declares that every unjust and unreasonable charge for transportation shall be unlawful. So by the second section every unjust discrimination between shippers is declared to be unlawful. The eighth section gives an action in favor of any party injured against any carrier who thus causes or permits to be done anything prohibited or declared to be unlawful by the act. Under section 9 any person injured may complain to the commission. Section 13 authorizes the commission to investigate the matter complained of. Section 14 requires that the commission make report in writing in respect of such matter, which shall include the findings of fact upon which its conclusions are based, together with its recommendation as to what reparation should be made by the carrier to the party found to be injured. By section 15 notice is required to be given to the carrier of the making of such order of reparation, and, if repa-

ration be not made in the time designated, then a statement to that effect is to be entered of record by the commission. And by section 16 the party injured, if reparation be not made as required by the commission, may apply in a summary way by petition to the Circuit Court for relief from such disobedience to the order of reparation. It would seem from these statutes that the commission has power and authority to order reparation for an injury sustained by any party on account of the doing, causing, or permitting to be done anything required by the act on the part of the carrier not to be done, and the question is, Have the plaintiffs sustained any injury within the purview of the act?

The Supreme Court has determined that before any party can recover under the interstate commerce act he must show, not merely the wrong committed by the carrier, but that the wrong complained of operated to the injury of the complainant. Parsons v. Chicago & Northwestern Ry., 167 U. S. 447, 17 Sup. Ct. 887, 42 L. Ed. 231. This was a case where the plaintiff sought to recover for having been unlawfully discriminated against, without showing further that the charges exacted from him were unjust and unreasonable. So it was said, after giving an apt illustration, Mr. Justice Brewer speaking for the court:

"But for the provisions of the interstate commerce act, the plaintiff could not recover on account of his shipments to Chicago, if only a reasonable rate was charged therefor, no matter though it appeared that through any misconduct or partiality on the part of the railway officials shippers in Nebraska had been given a less rate."

In a more recent case, decided by the Court of Appeals, Eighth Circuit—Knudsen-Ferguson Fruit Co. v. Michigan Cent. R. Co., 148 Fed. 968, 79 C. C. A. 46—it was held that, to support an action by a shipper against the carrier, under section 8 of the interstate commerce act, the shipper must show that there has been either some unreasonable or excessive charge imposed, or some unlawful discrimination practiced against him by which he has been pecuniarily injured. In that case icing charges were added, while it was claimed that icing was part of the duty imposed upon the carrier, which should have been taken care of under the ordinary transportation tariff. The court held against the proposition, and observed that the icing charges were properly specified in the schedule of rates.

These authorities do not meet the proposition here involved. The principle is that the carrier has fixed its own rate by filing the required schedule. This then becomes the lawful rate. The rate thus fixed must be deemed to be reasonable unless attacked on the ground that it is unjust and unreasonable. The acceptance of a greater or less rate of charge constitutes an unlawful act. Any shipper injured pecuniarily by the act has his right of action. If less than the schedule rate is exacted, it stands to reason that, while the carrier has violated the provisions of the law, the shipper has sustained no pecuniary loss; but, if the carrier exacts more than the schedule rate, the shipper sustains a loss by the difference between the schedule rate and the charged or unlawful rate. Being entitled to transportation at the lawful rate,

which, as observed, must be deemed to be reasonable, the shipper has necessarily sustained injury, in that he has had to pay more than the lawful or 'reasonable rate. It seems to us that this is the inexorable logic of the situation, and needs no authority to sustain it. The commission is authorized to require reparation for injury sustained by the shipper, and we think that its authority is broad enough to cover a case like this, as well as one where the charges are unreasonable. It would be a strange doctrine to say that a shipper is not injured, if, for instance, he is charged double, treble, or quadruple the schedule rate, and the law would be demoralizingly deficient if the commission could not afford reparation in such a case. The very scope and purpose of the act was to afford relief to the shipper in all cases of unlawful exactions to his injury, and it covers quite as well an unlawful exaction in excess of the schedule rate as an exaction above that which is just and reasonable  This answers the fourth contention.

[2] Now, to recur to the first contention, which is that the complaint does not state a cause of action against the defendants, or any of them, for the reason that the cause of action is not included in the order of the commission for reparation, it is urged that the cause must not only be included in the order of the commission, but that it must constitute the whole or part of the basis of the action. The purpose of the act, no doubt, was to confine the shipper who has first appealed to the commission for reparation to the same cause of action when he appeals to the Circuit Court for an enforcement of the order of reparation. Says the court in Western New York & P. R. Co. v. Penn Refining Co., 137 Fed. 343, 353, 70 C. C. A. 23, 33:

"No recovery by judicial proceedings under section 16 as amended can exceed, aside from interest and costs, the amount required by such order to be paid, nor be had for any cause not presented to the commission in the proceedings in which such order is made."

And so it is that the court remarked later:

"But the cause of action in a suit brought for the recovery of pecuniary reparation must have been included in the order of reparation, and have constituted the whole or part of the basis of such order."

The gist of the cause of action stated in the complaint is:

"That said assessment of charges and said rating of three ($3.00) dollars per hundred (100) pounds was not and is not lawfully applicable to said shipment, but was and is contrary to the provisions of Transcontinental Freight Bureau Westbound Tariff 1-G, I. C. C. Number 375, which tariff was effective at the time said shipment moved; the said rate of three ($3.00) dollars per one hundred (100) pounds was and is unjust and unreasonable; that the rating lawfully applicable to said shipment under the tariff as published by said defendants was and is two and $20/100$ ($2.20) dollars per one hundred (100) pounds; and that said rate of two and $20/100$ ($2.20) dollars per one hundred (100) pounds was and is just and reasonable."

This is the same cause, without question, as dealt with by the commission, as witness the statement contained in the report.

The complainants contend:

"(1) That the rate properly applicable was the commodity rate on furniture, or $2.20 per 100 pounds, carried in the Transcontinental Freight Bureau Westbound Tariff No. 1-G aforesaid, reading as follows."

This comprehends not only a part, but the whole, of the cause as presented to the commission. The contention on that ground is not well sustained.

[3] The second proposition is that:

"The report of the commission was incompetent, irrelevant, and immaterial, and should not have been admitted as evidence by the court, for the reason that it contains no finding or conclusion that the rate imposed in this case was unjust, unreasonable, or discriminatory, or that the classification complained of was unjust, unreasonable, or discriminatory, or that either of the plaintiffs was damaged by the action of the defendants, and also that said report includes the extraneous opinions and conclusions of the commission which should not have been considered by the court, as the evidence shows they were considered."

This is answered in the main by consideration of counsel's first contention. That which remains is touching the admissibility of the commission's report in evidence.

It must be premised that this cause was tried before the court without the intervention of a jury. A reading of the record will show that, although the full report, containing a commingled statement of opinion drawn from the facts, and of conclusions of law, as well as of the facts themselves, was admitted, the court rightly comprehended the legal value of the report as evidence, and we must assume that it made proper use of it for evidentiary purposes. This is manifest from the statement of counsel offering the report and the concluding remarks of the court in admitting it. We quote from the record:

"Mr. Badt: This is introduced, if your honor please, as prima facie evidence of the facts therein stated. Whatever these facts are, whether they are material or competent, is for your honor to judge. I simply introduce it as evidence of facts stated in the order. It is unfortunate that the commission in making the order mingled and confused matters of fact and law in such a way that it is difficult to extricate the various matters of fact from the matters of law. Some sentences refer both to matters of fact and matters of law. The difficulty in explaining that to a jury, though, is now eliminated, and your honor can consider the matters of fact separately."

Then, after a long discussion of the meaning and intendment of the act, the court participating, the court says:

"The whole thing is before the court, is it not? It has been admitted in evidence. For whatever it tends to show it is in evidence; for whatever you may legally rely upon that as showing it is in evidence."

There was no prejudicial error in thus admitting the record. See Southern Ry. Co. v. St. Louis Hay & Grain Co., 153 Fed. 728, 82 C. C. A. 614.

[4] The fifth contention as stated by counsel is this:

"But if the commission had power to interpret a classification and grant reparation for a misapplied rate, which we deny, was the rate in this case actually misapplied? The evidence introduced at the trial shows overwhelmingly that it was not."

This pertains to commodity and classified rates, and includes the question whether showcases come within the commodity designation, "furniture (new) all kinds." Under Western classification No. 41, applicable to furniture in car load lots, showcases are specially mentioned and take the class 1 rate, which is $3 per 100 pounds; but

under the provisions of. Transcontinental Freight Bureau Westbound Tariff 1-G, I. C. C. No. 375, which is a commodity tariff, a rate of $2.20 is made on "furniture (new) all kinds, minimum carload weight 12,000 pounds." Tariff Circular 15-A, rule 7, in effect at the time, provides as follows:

"In every instance where a commodity rate is named in a tariff upon a commodity and between specified points such commodity rate is the lawful rate, and the only rate that can be used with relation to that traffic between those points, even though a class rate or some combination may make lower. The naming of a commodity rate on any article or character of traffic takes such article or traffic entirely out of the classification and out of the class rates between the points to which such commodity rate applies."

This being a rule of construction as between the commodity and classified tariff which does not seem to be questioned by counsel for plaintiffs in error, it must be that the commodity rate will take the first place, and will prevail over the classified rate upon the same article; so that the question resolves itself into whether showcases come within the designation "furniture (new) all kinds."

The witnesses are in hopeless discord in their opinions—experts on tariff rating, some of them are—touching whether showcases are articles of furniture. It seems to be conceded that showcases fall within the dictionary meaning of the word "furniture," which would be the common acceptation. The Century Dictionary gives this definition:

"Furniture. (1) In general, that with which anything is furnished or supplied to fit it for operation or use; that which fits or equips for use or action; outfit; equipment; as, the furniture of a war horse, or of a microscope; table furniture. * * * (3) Collectively and specifically—(a) Those movables required for use or ornament in a dwelling, a place of business or of assembly, etc."

Formerly, and even now, showcases of a certain type rested upon counters in business places, not in any way affixed thereto, and were used for the display of articles of merchandise kept for sale. More recently these cases are made to extend to the floor, and are used for the display of articles of merchandise and also for counters over which goods are sold, but, as we understand, are not in any way affixed to the floor or building. and hence cannot be termed fixtures in any sense. They are "movables," and may be shifted from place to place, or even removed from the place of business, without the necessity of detaching them. In this sense, showcases are properly classified as furniture, and that, being the common acceptation of the term, should prevail over any technical meaning the word has acquired by tariff usage in the construction of tariff schedules. The schedules are published for the information of the public in general, who are not supposed to be cognizant of technical usage in rate problems, and it would be a snare to the unwary and uninformed to construe and interpret tariff schedules by any such technical standard. It follows that the tariff in the present instance was properly interpreted.

This disposes also of counsel's third contention, respecting the court's refusal to grant a nonsuit or to direct a verdict for defendants.

[5] The sixth and last contention is that the court was without authority to award a reasonable attorney's fee to the complainants as

part of the costs of the suit, for the reason that the act allowing such a fee is unconstitutional and void. It is claimed the act of Congress allowing such attorney's fee is class legislation, and therefore obnoxious to certain clauses of the federal Constitution, and the case of Gulf, Colorado & Santa Fé Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255. 41 L. Ed. 666, is cited in support of the position. We think, however, that the act cannot be classed as class legislation. The act deals with railroad and transportation tariffs, and is designed to afford an adequate remedy to all persons who may sustain injury by a nonobservance of the law. It applies alike to all common carriers engaged in the transportation of persons and property, doing an interstate business, and cannot be justly termed an arbitrary, unnatural, or unreasonable classification.

It follows from these considerations that the judgment of the Circuit Court should be affirmed, and it is so ordered.